IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| NGOZI MADUKWE, | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | *     Case No.: GJH-16-767 |
| CAPITAL ONE | * |
| FINANCIAL CORPORATION, *et al.*, | * |
| Defendants. | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Ngozi Madukwe brings this case against Defendants Capital One Financial Corporation ("Capital One"), Federal Home Loan Mortgage Corporation ("Freddie Mac"), and Cohn, Goldberg and Deutsch, LLC ("CGD"), in connection with the foreclosure and sale of her home. ECF No. 12. Pending before the Court are two Motions to Dismiss, the first filed by Defendants Capital One and Freddie Mac, ECF No. 13, and the second filed by Defendant CGD, ECF No. 16. These issues have been fully briefed and a hearing is unnecessary. Loc. R. 105.6 (D. Md. 2016). For the reasons stated below, the Court will grant Defendants' motions and dismiss the case.

## I.   BACKGROUND[1]

On June 27, 2007, Plaintiff executed an adjustable rate note and deed of trust with BF Saul Mortgage Company ("BF Saul"), in order to purchase a home located at 533 Cedar Spring

---

[1] Unless stated otherwise, all facts are taken from Plaintiff's Amended Complaint, or documents attached to and relied upon in the Amended Complaint, and are accepted as true.

Street, Gaithersburg, Maryland 20877. ECF No. 12 ¶ 2; *see also* ECF No. 12-1 at 2.[2] BF Saul was subsequently acquired by Capital One in 2008, when Capital One merged with BF Saul's parent company. ECF No. 12 ¶ 9.

At some point during the intervening years, Plaintiff defaulted on her loan. *Id.* ¶ 11. On July 8, 2013, Capital One appointed CGD as substitute trustee for Plaintiff's loan. *Id.* ¶ 12; *see also* ECF No. 12-3. On July 12, 2013, CGD initiated foreclosure proceedings against Plaintiff in Montgomery County Circuit Court, filing copies of the note and deed of trust for the 533 Cedar Spring Street property in support of their claim. ECF No. 12 ¶ 13; *see also CGD v. MaDukwe*, 379030V (Mont. Cty. Cir. Ct. 2017), Dkt. No. 1.[3] Plaintiff alleges that this note is a forgery and that Capital One "never owned and held Plaintiff's note." ECF No. 12 ¶¶ 33-34. Thus, Plaintiff claims that Capital One lacked the authority to appoint CGD as trustee, and CGD consequently lacked the authority to commence foreclosure proceedings. *Id.* ¶ 41.

During the foreclosure proceedings, Plaintiff sought a loan modification from Capital One. *Id.* ¶ 11. On September 15, 2015, Plaintiff's request for a loan modification was denied. *Id.*; *see also* ECF No. 12-2. In the letter, Capital One explained that Plaintiff had already received a loan modification under the Home Affordable Modification Program ("HAMP") in 2010. ECF No. 12-2 at 2. She was informed that her subsequent attempts at loan modifications in 2013 and 2014 were denied because of her 2010 loan modification, and the fact that subsequent modifications would not have reduced her monthly mortgage payment. *Id.* The letter also explained that Freddie Mac was the investor in her loan and that Capital One was her loan

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[3] The Maryland state court docket can be accessed at http://casesearch.courts.state.md.us (last visited March 17, 2017).

servicer. *Id.* Thus, Capital One was required to "service [Plaintiff's] home loan per the guidelines of [Plaintiff's] home loan's investor FHLMC ("Freddie Mac")." *Id.*

Upon learning that Freddie Mac, rather than Capital One, was the investor of her loan, Plaintiff sent a letter to Capital One on October 10, 2015, requesting more information "regarding Freddie Mac's involvement," and raising concerns "regarding the validity…of the note." ECF No. 12 ¶¶ 42-43. Plaintiff alleges that Capital One refused to acknowledge acceptance of her letter or respond to her requests. *Id.* ¶ 44. Plaintiff claims that a response to her request "would have shown that Capital One had no authority to foreclose or take any other action in connection [with the property]." *Id.* ¶ 78.

On December 29, 2015, the Montgomery County Circuit Court issued an order ratifying the foreclosure sale, and after a hearing on March 8, 2016 in which Plaintiff was present, granted possession of the property to the foreclosure purchaser. *See CGD*, 379030V at Dkt. Nos. 41, 48. Plaintiff subsequently filed a motion to reconsider the court's ruling, and in a separation motion, moved "to stay proceedings pending determination of whether Capital One currently owns the notes and loan." *Id.* at Dkt. Nos. 51, 56. Plaintiff also submitted supplemental points and authorities "demanding dismissal and/or stay for failure to disclose secured party Freddie Mac." *Id.* at Dkt. 59. In response to these motions, the court issued orders denying Plaintiff's request for reconsideration and denying Plaintiff "all relief requested by [Plaintiff's] Motion to Stay Proceedings pending determination of whether Capital One currently owns the note and loan." *Id.* at Dkt. Nos. 72, 104. A final order ratifying the foreclosure sale was issued shortly thereafter. *Id.* at Dkt. No. 106. Plaintiff continued to vigorously contest the foreclosure, filing several motions for reconsideration and interlocutory appeals to the Maryland Court of Special Appeals. *See id.* at Dkt. Nos. 99, 111, 114, and 116.

3

Plaintiff initiated this case on March 16, 2016, ECF No. 1, and subsequently amended her complaint on April 20, 2016. ECF No. 12. In her Amended Complaint, she alleges that Capital One, and thus CGD, did not have the right to foreclose on her property because the note they submitted to the Montgomery County Circuit Court was fraudulent. *Id.* ¶¶ 33-34; 41. She also alleges that Capital One hid Freddie Mac's involvement in the loan by failing to respond to her request for information, which caused her to lose her home to "an entity that had no true interest[] in her loan." *Id.* ¶¶49-53. Plaintiff claims that Defendants' actions constitute fraud, civil conspiracy and tortious interference with a contract, and also alleges violations of the Maryland Consumer Debt Collection Act ("MCDCA"), the Maryland Consumer Protection Act ("MCPA"), the Real Estate Settlement Procedures Act ("RESPA"), and the Fair Debt Collection Practices Act ("FDCPA"). *Id.* ¶¶ 54-86. In addition, Plaintiff requests that the Court issue two declaratory judgments, the first stating that Maryland's foreclosure system is inadequate to litigate counterclaims and violates the Due Process Clause of the Fourteenth Amendment, and the second that "no Defendant named in this action has any right, title or interest in her Note." *Id.* at 28-36. On May 4, 2016, Defendants Capital One and Freddie Mac filed a Motion to Dismiss for lack of subject matter jurisdiction, and for failure to state a claim. ECF No. 13. On May 9, 2016, Defendant CGD filed a Motion to Dismiss reiterating the arguments made by the other Defendants. ECF No. 16. Plaintiff filed her responses, ECF Nos. 18 and 22, and Defendants Capitol One and Freddie Mac filed a reply, ECF No. 20.

## II.    STANDARD OF REVIEW

"It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown.* 462 F.3d 312, 316 (4th Cir. 2006) (citation omitted). Once a challenge is made to subject matter jurisdiction, the plaintiff

bears the burden of proving that the Court has subject matter jurisdiction. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.,* 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted); *see also Ferdinand–Davenport v. Children's Guild,* 742 F. Supp. 2d 772, 777 (D. Md. 2010). However, the court should grant a Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans,* 166 F.3d at 647.

To survive a motion to dismiss invoking Fed. R. Civ. Pro. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").

Fed. R. Civ. P. 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks

omitted). Complaints filed by *pro se* plaintiffs, as here, are "to be liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the Complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Pursuant to Federal Rule of Evidence 201, a court, at any stage of the proceedings, may "judicially notice a fact that is not subject to reasonable dispute," provided that the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). These facts may be properly considered by the court without converting a motion to dismiss into a motion for summary judgment, as long as the facts are construed in the light most favorable to the plaintiff. *Zak v. Chelsea Therapeutics Int'l. Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015). Specifically, when, as here, Defendants have raised the defense of *res judicata,* "a court may judicially notice facts from a prior judicial proceeding." *Ashe v. PNC Fin. Servs. Grp., Inc.*, 165 F. Supp. 3d 357, 360 (D. Md. 2015) (quoting *Brooks v. Arthur*, 626 F.3d 194, 199 n.6 (4th Cir. 2010)). The consideration of the affirmative defense of *res judicata* is appropriate at the motion to dismiss stage where "it clearly appears on the face of the complaint...and the res judicata defense raises no disputed issue of fact." *Andrews v. Daw*, 201 F. 3d 521, 524 n.1 (4th Cir. 2000).

## III.  DISCUSSION

### A. Abstention Under *Rooker-Feldman*[4]

As a threshold matter, Defendants argue that the *Rooker-Feldman* doctrine bars

Plaintiff's attempts to re-litigate her state court foreclosure case in federal court. Under *Rooker-*

*Feldman*, federal district courts must abstain from hearing "cases brought by state-court losers

complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments."

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine not only

prevents lower federal courts from reviewing such judgments, but also from reviewing issues

that are "inextricably intertwined" with those judgments. *Id.* at 286 n.1.

While courts have applied this doctrine to dismiss cases requesting review of state

foreclosure proceedings, *see Sanders v. CGD, Goldberg, & Deutsch, LLC*, Civil Action No.

DKC 15-1571, 2016 WL 223040, at \*8 (D. Md. Jan. 19, 2016), the Fourth Circuit has recently

emphasized the "narrow role" that the doctrine should play. *Thana v. Bd. of License*

*Commissioners for Charles Cty., Maryland*, 827 F.3d 314, 320 (4th Cir. 2016). In *Thana*, the

Fourth Circuit distinguished preclusion principles, which could bar "concurrent, independent

suits...address[ing] the same subject matter, claims and legal principles," from the *Rooker-*

---

[4] In addition to arguing that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine and *res judicata*, Defendants also argue that Plaintiff lacks standing to bring these claims because they were not included in her schedule of assets in her bankruptcy proceedings, and, thus, remain the property of the bankruptcy estate. *See Nicholas v. Green Tree Servicing, LLC*, 173 F. Supp. 3d 250, 255 (D. Md. 2016) ("If the debtor's schedule does not disclose a cause of action that accrued pre-petition, that cause of action remains the property of the estate after the bankruptcy case is closed." ) (internal citation omitted). However, Plaintiff's first five bankruptcy cases were dismissed due to Plaintiff's failure to provide sufficient information. *See* ECF No. 13-7 (listing Plaintiff's bankruptcy cases). Thus, it is unclear if such claims ever became part of the bankruptcy estate. Further, Plaintiff does reference pending litigation in her Amended Schedule A/B in her most recent bankruptcy case, stating that "the debtor filed a complaint in the United States District Court of Maryland alleging RESPA violations. She is a pro se litigant. She states that she is seeking her residence due to wrongful foreclosure." *In re* MaDukwe, No. 16-12069 (Bankr. D. Md. 2016), B. Dkt. No. 50 at 4. Plaintiff amended her bankruptcy filings after briefing in this case was complete and Defendants did not file supplemental briefings addressing this issue. The Court will therefore not resolve the issue as the case is being dismissed on other grounds.

*Feldman* doctrine, which "assesses only whether the process for appealing a state court judgment to the Supreme Court under 28 U.S.C. § 1257(a) has been sidetracked by an action filed in a district court specifically to review that state court judgment." *Id.* (emphasis in the original) (alteration added). "[I]f a plaintiff in federal court does not seek review of the state court judgment itself but instead presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court." *Id.* (citation omitted) (emphasis in original). Thus, the posture of the case is important to the Court's analysis of whether abstention under *Rooker-Feldman* is appropriate.

Here, Plaintiff is not foregoing the state court appellate process in exchange for federal court review of her claims and is presenting an independent claim. In fact, the state court docket demonstrates that Plaintiff vigorously contested the foreclosure at every turn while this case was pending. *See CGD*, 379030V at Dkt. Nos. 99, 111, 114, and 116 (listing plaintiff's motions for reconsideration and interlocutory appeals). Thus, by filing the instant case, Plaintiff was not seeking to "frustrat[e] the Supreme Court's exclusive jurisdiction over such a judgment." *Thana.* 827 F.3d at 321 (4th Cir. 2016). Because this lawsuit is a concurrent, independent proceeding, *Rooker-Feldman* is inapplicable. *See Butterworth v. Black*, No. PWG-15-1721, 2016 WL 4662344, at \*6 (D. Md. Sept. 6, 2016) (holding that *Rooker-Feldman* is inapplicable because the state court judgment was on appeal). Thus, the Court will not abstain from hearing Plaintiff's claims.

### B. Res Judicata

However, declining to apply *Rooker-Feldman* does not signify that "[an] action can continue if it is barred under state preclusion principles." *Thana,* 827 F.3d at 323. Defendants argue that Plaintiff's active participation in the state court foreclosure proceedings bar her from

asserting these claims now. Plaintiff disputes this, arguing that she did not have a fair opportunity to litigate these issues in the prior proceedings.[5]

"It is well established that the doctrine of res judicata bars the relitigation of matters previously litigated between parties and their privies, as well as those claims that *could have been asserted* and litigated in the original suit." *Anyanwutaku v. Fleet Mortgage Grp.. Inc.*, 85 F. Supp. 2d 566, 570 (D. Md.), *aff'd*, 229 F.3d 1141 (4th Cir. 2000) (emphasis in original) (citations omitted). "Res judicata, which is sometimes referred to as claim preclusion, helps to avoid 'the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibilities of inconsistent decisions.'" *Id.* (quoting *Murray Int'l Freight Corp. v. Graham*, 315 Md. 543, 547 (Md. 1989)). "The traditional principle of res judicata has three elements: (1) the parties in the present litigation should be the same or in privity with the parties to the earlier case; (2) the second suit must present the same cause of action or claim as the first; and (3) in the first suit, there must have been a valid final judgment on the merits by a court of competent jurisdiction." *de Leon v. Slear*, 328 Md. 569, 580 (Md. 1992).[6]

The first element of *res judicata* is satisfied with respect to Defendant CGD because CGD was a party to the prior state court litigation. As a substitute trustee, CGD sought to enforce the rights of Capital One, the loan servicer, and Freddie Mac, the investor. "Privity does not require 'an exact identity of parties,' rather '[t]wo parties can be said to be in privity when

---

[5] In her briefing, Plaintiff often blurs the related concepts of claim preclusion and issue preclusion, also known as collateral estoppel, encompassed within the broader doctrine of *res judicata.* For issue preclusion to apply, "the party against whom the plea is asserted must have been given a fair opportunity to be heard on the issue." *DeCosta v. U.S. Bancorp*, No. DKC 10-0301, 2010 WL 3824224, at *6 (citation omitted). However, that is not an element of claim preclusion.

[6] The Court applies Maryland law regarding *res judicata* because federal courts must "give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 523 (1986).

the interests of one party are so identified with the interests of another that representation by one party is representation of the other's legal right.'" *Williams v. Romarm S.A.*, 116 F. Supp. 3d 631, 638 (D. Md. 2015), No. CV TDC-14-3124, 2016 WL 4548102 (D. Md. Feb. 19, 2016) (quoting *Universal Furniture Int'l, Inc. v. Frankel*, 538 F. App'x 267, 270-71 (4th Cir. 2013)). Because CGD sought to enforce the rights of Capital One and Freddie Mac, the Court finds that they were in privity with CGD for the prior proceedings. *See McGhee v. JP Morgan Chase Bank, N.A.*, No. CIV.A. DKC 12-3072, 2013 WL 4495797, at *4 (D. Md. Aug. 20, 2013) (holding that substitute trustees are in privity with those whose rights they seek to enforce).

To satisfy the second element, a party must demonstrate that "the claims in this litigation arise out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Bullock v. Ocwen Loan Servicing, LLC*, No. CIV. PJM 14-3836, 2015 WL 5008773, at *5 (D. Md. Aug. 20, 2015) (citations and quotations omitted); *see also deLeon*, 328 Md. at 589 (1992) (stating that Maryland follows "the 'transaction' test, as set forth in § 24 of the Restatement (Second) of Judgments, as the basic test for determining when two claims or causes of action are the same for purposes of res judicata.") (citation omitted). In Claims One and Three, Plaintiff alleges that the Defendants conspired to falsely represent that Capital One was the holder of the note to the 533 Cedar Spring Street property. Similarly, in Claims Two and Six, Plaintiff alleges that Defendants' enforcement of the fraudulent note constituted negligence and tortious interference with a contract. Defendants' reliance on this allegedly fraudulent note also serves as the basis for Plaintiff's claims under the MCDCA (Claim Four), the MCPA (Claim Five), and the FDCPA (Claim Eleven). To prevail on any of these claims, the Court would need to determine that the note that CGD sought to enforce in the foreclosure proceedings was fraudulent. Whether or not Defendants had the legal authority to foreclose on the 533 Cedar

Spring Street property was at the crux of the foreclosure proceedings and thus involved the same transaction.

Plaintiff's RESPA claim (Claim Seven), and her state law claims derived from the alleged RESPA violation, asserting violations of the MCPA (Claim Eight), MCDCA (Claim Nine) and Negligence (Claim Ten), present a closer call. At first blush, Plaintiff's claim that Defendant Capital One did not respond to a qualified written request ("QWR") does not appear to be part of the same transaction resolved in the prior claim. However, Plaintiff's damages claim is entirely based on the allegation that the failure to respond prevented Plaintiff from discovering that Capital One did not have the authority to foreclose on the loan. ECF No. 12 ¶ 78.[7] Thus, it also arises from the same transaction as the claim in the state court proceeding, i.e., the alleged fraudulent note.

Additionally, Plaintiff could have raised these claims in the prior state court litigation, addressing the validity of the same note regarding the same property. *See McGhee*, 2013 WL 4495797, at *5 ("The rules of claim preclusion provide that if the later litigation arises from the same cause of action as the first, then the judgment in the prior action bars litigation 'not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented.'") (citation omitted). Plaintiff's allegation that the Maryland state court foreclosure proceedings barred her from raising these issues is unpersuasive. "Nothing in the Maryland Rules of Procedure prohibits a mortgagor who - as here - voluntarily appears in a mortgage foreclosure proceeding from filing a counterclaim." *Bullock*, 2015 WL 5008773, at *6. (citing

---

[7] RESPA permits an injured party to recover both actual and statutory damages. *See* 12 U.S.C. § 2605(f)(1)(A)-(B). Statutory damages are not available to Plaintiff because she has not alleged any facts that would demonstrate that Capital One engaged in "a pattern or practice of noncompliance with the requirements [of RESPA]" as would be required to receive statutory damages under the statute. *Id.* at § 2605(f)(1)(B). As a result, actual damages is an essential element of the claim. *See McCray v. Bank of Am., Corp.*, No. CIV.A. ELH-14-02446, 2015 WL 3487750, at *12 (D. Md. June 1, 2015) ("a plaintiff must allege damages in order to state a claim that a defendant has violated RESPA's QWR provisions.").

*Fairfax Sav., F.S.B. v. Kris Jen Ltd. P'ship*, 338 Md. 1, 21 (1995). This extends to any claims Plaintiff wanted to assert regarding the veracity of the documents submitted in the case. *See Jones v. HSBC Bank USA, N.A.*, No. RWT 09CV2904, 2011 WL 382371, at *5 (D. Md. Feb. 3, 2011), *aff'd*, 444 F. App'x 640 (4th Cir. 2011) (plaintiff's assertion that defendants submitted false affidavits could "clearly have been raised in the [foreclosure] proceeding before the Circuit Court for Montgomery County.").[8]

In addition to Plaintiff's ability to file counterclaims, the record shows that Plaintiff could and did raise these issues in the foreclosure case itself. On April 1, 2016, Plaintiff moved "to stay proceedings pending determination of whether Capital One currently owns the notes and loan." *See CGD*, 379030V, at Dkt. No. 56. Further, on April 4, 2016, Plaintiff submitted supplemental points and authorities "demanding dismissal and/or stay for failure to disclose secured party Freddie Mac." *Id.*, at Dkt. 59. While the court ultimately denied her request for relief, *see id.*, at Dkt. No. 104, Plaintiff cannot now say she was unable to raise these concerns and has provided no specific facts alleging how she was unable to present her claims.[9]

Plaintiff's reliance on *Poku v. Fed. Deposit Ins. Corp. as Receiver for Washington Mu. Bank F.A.*, No. CIV.A. RDB-08-1198, 2011 WL 334680 (D. Md. Jan. 31, 2011), to argue that her claims should not be barred by *res judicata* is unpersuasive. In *Poku*, which includes a

---

[8] In *Agomuoh v. PNC Fin. Servs. Grp.*, this Court noted that raising counterclaims in a foreclosure proceeding raised "practical difficulties" and thus declined to abstain under the *Colorado River* doctrine. *Agomuoh v. PNC Fin. Servs. Grp.*, No. GJH-16-1939, 2017 WL 657428, at *6 (D. Md. Feb. 16, 2017). However, *Colorado River* abstention is a limited doctrine, with federal courts encouraged to take cases rather than abstain, *see Gannett Co. v. Clark Const. Grp., Inc.*, 286 F.3d 737, 741 (4th Cir. 2002) ("We begin with the premise that '[a]bstention from the exercise of federal jurisdiction is the exception, not the rule.'") (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)), whereas, *res judicata* is a broader doctrine, "designed to protect litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161–62 (4th Cir. 2008) (internal citation omitted); *see also Gannett Co.*, 286 F.3d at 746 ("The threat of different outcomes… is not the type of inconsistency against which [Colorado River] abstention is designed to protect, in that [plaintiff and defendant] are both parties to the Federal and State Contract Actions; thus, res judicata effect will be given to whichever judgment is rendered first.").

[9] The parties have not fully briefed the related doctrine of issue preclusion, thus the Court will not address it here.

discussion of *Fairfax Sav., F.S.B.,* 338 Md. 1, on which Plaintiff also relies, the court held that the second element of *res judicata* was not met because the two separate loans at issue represented separate transactions. *Id.* at *6. Thus, the court held that "while it is theoretically possible that [plaintiff] could have raised his claims [regarding loan two] in the foreclosure proceeding [regarding loan one] via a counterclaim, the two loans at issue and the arguments and defenses are not sufficiently related to form a convenient trial unit." *Id.* Here, unlike in *Poku,* there is only one note, and thus, one transaction at issue. Further, and in contrast to *Poku,* Plaintiff's allegations specifically contest the result of the prior foreclosure action. *Id.* (plaintiff "raises no allegations as to the propriety of the foreclosure action, and instead only challenges the [loan two] proceedings."). *Best v. Driscoll,* 223 Md. App. 768, *cert. denied,* 445 Md. 4 (2015), is similarly unhelpful. In *Best,* the court held that the defendant had filed his counterclaims for violations of the MCDCA and MCPA claims in a timely matter, despite plaintiff's argument that they had been filed late, *id.* at *10, which demonstrates, contrary to Plaintiff's assertions, that such counterclaims are not barred by the procedures of the Montgomery County Circuit Court. Further, the Maryland Court of Special Appeals affirmed the decision of the lower court, holding that the factual predicate of the defendant's counterclaims were the same as those alleged in the motion to stay, and thus, "[t]he court's factual findings from the hearing on the motion to stay and dismiss effectively settled the disputed claims as [to] the right or interests of the appellees to enforce the lien." *Id.* at *11. Thus, the Court finds that the second element of *res judicata* is met.

To establish the third and final element of *res judicata,* there must have been "a valid final judgment on the merits" in the prior litigation. *de Leon v. Slear,* 328 Md. at 580. The docket from the foreclosure case states that the Montgomery County Circuit Court ratified the

foreclosure sale, *see CGD*, 379030V at Dkt. No. 41, denied all relief requested by Plaintiff's motion to stay the foreclosure proceedings, *see id.* at Dkt No. 104, issued an order ratifying the report of the auditor, *see id.* at Dkt. No. 106, re-affirmed issuance of a writ of possession, *see id.* at Dkt. No. 113, and closed the case, *see id.* at Dkt. No. 145.[10] For purpose of res judicata, "[t]he important ruling in foreclosure cases is the circuit court's ratification of the foreclosure sale." *McGhee*, 2013 WL 4495797, at *6 (citation omitted). Thus, the Court finds that third element of *res judicata* has been satisfied.

A review of the prior state court proceedings demonstrates that Plaintiff vigorously litigated her foreclosure for over two and half years. To allow Plaintiff to continue to pursue her claims in a second forum, "would allow [plaintiff] to frustrate the goals of res judicata through artful pleading and claim splitting given that '[a] single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law.'" *McGhee*, 2013 WL 4495797, at *5 (quoting *Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004)). Thus, Plaintiff's claims are barred.[11]

### C. Declaratory Judgment

In addition to her above-referenced claims, Plaintiff seeks two declaratory judgments from this Court. Pursuant to the Federal Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an

---

[10] The Court of Special Appeals also affirmed the judgment of the Montgomery County Circuit Court. *See id.* at Dkt. No. 146. Although the Court was unable to determine what specific judgment the Court of Special Appeals was affirming, any such affirmation would only be a repetition of the lower court's denial of Plaintiff's claims.

[11] Even if they were not barred by *res judicata*, Plaintiff's claims relating to violations of RESPA would also fail as her correspondence solely relates to the validity of the loan, rather than its servicing, and thus, does not qualify as a QWR under RESPA. *See e.g. Combs v. Bank of Am., N.A.*, No. GJH-14-3372, 2015 WL 5008754, at *3–4 (D. Md. Aug. 20, 2015) (holding that Plaintiff's correspondence was not a QWR because "it requests account documents and information related to ownership of the loan and does not point to any errors with the account."); *Cole v. Fed. Nat'l Mortg. Ass'n*, No. GJH-15-3960, 2017 WL 623465, at *6 (D. Md. Feb. 14, 2017) (holding that Plaintiff's correspondence was a QWR where it "disputed the assessed interest payments, fees, costs, and delinquency status" and thus related to the servicing of the loan rather than only its validity).

appropriate pleading, may declare the rights and other legal relations of any interested party

seeking such declaration…" 28 U.S.C. § 2201(a). However, seeking a declaratory judgment does

not eliminate Plaintiff's obligation to state a claim upon which such relief may granted. *See*

*Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*, 299 F. Supp. 2d

505, 528 (D. Md. 2004) (citing *Miller v. Pac. Shore Funding,* 224 F.Supp.2d 977, 993 (D. Md.

2002)).

Because the Court finds that Plaintiff's claims are barred by *res judicata,* Plaintiff's

request for a declaration that "no Defendant named in this action has any right, title or interest in

her Note...[or] a right to foreclose upon her property…" is denied. ECF No. 12 at 36. Similarly,

Plaintiff's request that the Court declare that Maryland's foreclosure proceedings violate the Due

Process Clause of the Constitution fails because such claims may only be raised against state

actors, not the private corporations included as Defendants in this case.[12] *See Ann Stewart v.*

*Dimon,* No. 1:14-CV-1707, 2015 WL 11110945, at *4 (E.D. Va. Mar. 13, 2015), *aff'd,* 627 F.

App'x 189 (4th Cir. 2015) (holding that plaintiff's constitutional claims in a foreclosure were

meritless where no government entities were a party to the case.). Thus, Plaintiff's requests for

declaratory judgment are denied.[13]

---

[12] While Freddie Mac is overseen by government regulators, it is also a private corporation. *See e.g.*
"Federal Home Loan Mortgage Corporation (Freddie Mac)" https://www.usa.gov/federal-agencies/federal-home-
loan-mortgage-corporation-freddie-mac (listing Freddie Mac as a "private corporation."); "Investor FAQ"
http://www.freddiemac.com/investors/faq.html (stating that Freddie Mac is not a government agency) (last accessed
on March 17, 2017).

[13] In addition to dismissing the Amended Complaint with prejudice, Defendants Capital One and Freddie
Mac request "all other just and equitable relief, including any attorneys' fees and costs to which they are entitled,"
ECF No. 13-1 at 30, but omitted any specific argument for why they are entitled to such relief. While it is within the
Court's inherent authority to sanction litigants for the "full range of litigation abuses" including bad faith, *see*
*Thomas v. Ford Motor Co.*, 244 F. App'x 535, 538 (4th Cir. 2007), this power "must be exercised with restraint and
discretion." *Kreischer v. Kerrison Dry Goods,* 229 F.3d 1143 (4th Cir. 2000) (quoting *Chambers v. NASCO, Inc.*,
501 U.S. 32, 44 (1991)) (unpublished). Here, the Court declines to exercise its discretion to award attorneys' fees or
the payment of costs where there is no evidence of bad faith or a failure to comply with the Court's orders in the
instant proceedings. Thus, Defendants' request for attorneys' fees and costs is denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss, ECF Nos. 13 and 16, are

granted. A separate Order follows.

Dated: March 2⁴, 2017

_____
GEORGE J. HAZEL
United States District Judge